United States v. Taylor here and Ms. Herrera, is that it? Did I get it? Okay. May it please the court. I'm Diana Herrera and I'm representing Mr. Cornell Taylor in this matter. The district court erred when it found that Mr. Taylor continued to meet the criteria for involuntary civil commitment under 18 U.S.C. section 4246. The evidence presented to the district court showed by a preponderance of the evidence that his unconditional release from custody would not pose a substantial risk of danger to others or the property of others under 4246E1. Accordingly, we are asking you to vacate the district court's ruling and release Mr. Taylor from custody. Mr. Taylor was involuntarily civilly committed in 2007 and he had his hearing challenging this continued commitment in 2012. Do you and the public defender's office appeal all of these cases? No ma'am, we do not. Mr. Taylor asked that we appeal the decision reached by the district court. Do you appeal all the cases in which the person asked you to appeal? No. We are duty bound to do so. Yes, Judge Moss. It would be ineffective assistance of counsel if we did not appeal. At the hearing, the government submitted to the court a 2011 forensic evaluation. The expert who was one of the authors of that, who I called as a witness, was Dr. Lucking, testifying from a report that was authored approximately 11 months prior to the time of the hearing. And in his report and through the testimony presented to the district court, certain very positive factors about Mr. Taylor were elicited. The most powerful factor is that his behavior is conforming to everything that is asked of him at FMC Botner. He's in the least restrictive housing available. He is incurring no incident reports. He's not getting any write-ups. He's not engaging in fights. He's keeping to himself, but for the fact that Dr. Lucking disagreed that Mr. Taylor should take Haldol, he remains at Botner. His behavior belies his continued commitment. What about Dr. Lucking's testimony that there were psychotic symptoms and delusional symptoms that Judge Britt, myself, and his attorney, he thinks we're conspiring to keep him locked up in the facility. You're one of the conspirators. Apparently I am. And here you are making a fine argument for his release. And you're listed as a conspirator. Now, that strikes me as a bit delusional that somebody who's doing their best to get him released is part of a conspiracy to keep him locked up. And, I mean, that, to me, struck me as something a district court could take into account. I understand how the district court took it into account, Judge Wilkinson. However, I think what was elicited through some of the forensic evaluations that were presented to the court was that even though he perceives people to be part of a conspiracy to keep him in custody because, now remember, he's never been found guilty of a federal crime. So, it is not illegal to have a mental illness. And so, even though he has delusions, he's not acting violently on them. When I meet with him, he's perfectly civil with me. He disagrees with why he's there. But, moreover, he... So, one of the things you worry about is not only other people, but sometimes one of the risks is when people win their freedom, they don't take their medications. He's taking two of three medications, as I understand it. There's a dispute over the Haldol-D, but... He's refusing to take. That's the basis, isn't it? He's refusing to take one of the medications? He's refusing to take the Haldol-D, yes. How long has he refused to take the Haldol? At the time of the hearing, he had been refusing for approximately 12 months. He stopped in February of 2011, and the hearing was held in February of 2012. And I think that was... Wasn't there testimony that his conduct had degenerated because of that? I know you don't agree with that testimony, but there was some testimony. I don't know if the testimony was attributable to the psychotic portion of his mental illness because he is also being treated and is taking two antidepressants for the bipolar aspect of his mental illness. And Dr. Lucking said in his testimony that he doesn't know whether the argumentative and irritable portion of Mr. Taylor's mental illness is attributable to the psychotic features, which are not being treated by Haldol, or to the other features, which are being treated by the two antidepressants. But, of course, if he's taking all three medications and he still has the symptoms, then they try something else. But if he refuses to take one of the medications, how can they tell, right? It appears that he's not been given a choice of medications, and Dr. Tabrizi wrote in her report that he is exhibiting some mild side effects of the Haldol that he did take at one time, the tardive dyskinesia of his face, and that is a long-lasting and permanent side effect. And he does have a constitutional right to refuse medication, and the only way that Butner can forcibly medicate him is if his condition deteriorates to such a grave that he doesn't have a constitutional right to be free if he's not being medicated appropriately. Did one of his doctors come up with an alternative medication? They have not. Dr. Tabrizi just suggested an antipsychotic. She didn't suggest which one. And frankly, I think what was clear from the hearing is that Dr. Lucking doesn't interact with Mr. Taylor. He goes for months without seeing him, and then we'll pass him in the hallway. So I think what unfortunately we have is somebody who's being warehoused because he's falling into this morass of being good enough not to be forcibly medicated. Was there any contradictory expert testimony? Normally we have a contradiction among the experts, but here you have both experts saying, no, it would provide a substantial release of danger. A release would provide a substantial danger. That is unusual that we don't have a difference of opinion. Because normally we have the District of Fact Finder resolving a conflict in expert testimony, but here there was no conflict in terms of the bottom line. That's correct. I think taking all of these factors into account, when we presented Dr. Lucking at the hearing, through his testimony I think then we met our burden of showing by a preponderance of the evidence that the people who treat him, the people who interact with him on a daily basis, are saying that he is abiding by all of the conditions. He has insight into his mental illness and is willing to take medication on the outside. He has said that not only in the reports, the forensic reports submitted to him. But Dr. Tabrisi said he had poor insight into that illness. I believe she said he had some minimal insight. And he has insight into his mental illness. What I'm wondering is, he may be a substantial risk to other people, but he also could be a substantial risk to himself. I mean, you don't want to have somebody on the outside and then doesn't take medications or takes them on an episodic or sporadic basis and inflicts serious harm upon himself. You don't want him to hurt himself. Certainly, Judge Wilkinson, as people and as humans, we don't want that. But that is not part of 18 U.S.C. section 4246. Danger to others or the property of others is part of the statute. Danger to self is not contemplated in the statute. I'm just saying as a practical matter, I sure would feel badly if he, you know. As would I, and I think there's a tension there. And Mr. Taylor very much does not want to remain at Butner. He's been there for seven years. Well, he's refused placement to North Carolina, right? So he does not want to remain in Butner enough to accept one of those places. That is true. That is in the past record. However, at the time of the hearing, Butner found that he did not meet the criteria for conditional release. I understand that, but his testimony in front of the district court was not helpful to his case. Wouldn't you agree? The district court's there. The district court has him in front of it. In the scheme of clients who I've represented at 42, 46 hearings, I believe that his testimony was helpful in helping Judge Britt understand his level of, I don't want to say competence because that's a term of art, but just his understanding of his current position, what is required of him were he to be released. He understands that he has a mental illness. He may disagree with what it is, but he understands that he has one and that he needs to take medication for it and that he's troubled by the fact that he's not been convicted of a crime and would like to be released and that his behavior has conformed to everything that Butner has asked of him and would like the opportunity to do so. Given Dr. Lucking's testimony that he does not see him. I know it's not strictly part of the statutory standard, but do you ever, do the expert, and has the testimony ever asked the question of what would happen to this individual upon release? Are there family, friends that could provide some support? Is there some prospect of employment? Those kind of things, because I would think they might be relevant to the ultimate question of whether someone is a substantial risk to other people. You would think it would be less of a risk if there was some path forward with family and friends and jobs and work and everything rather than if someone is simply drifting and there's no structure. In other words, I think it's related to risk. Absolutely, and those tenants have been articulated in the reports as far as community support and social support providing a safety net essentially for someone or having a job to return to or having a stable housing situation to return to are all part of the calculus. Mr. Taylor does have family support in the Chicago area. He does have a family and a supportive mother. And he was receiving Social Security benefits in the past, so he is able to support himself and feed and clothe himself. And he has sought mental health treatment in the community in the past. He has those connections with providers, and so he knows where he can go to seek help if he needs it and has done so in the past. Certainly, the Butner report and the independent examiner look at a number of factors, and the case law I think is so fact-dependent in this arena that we can't look to any one case and hang our hat on it. But I think what we can gather from it... So fact-dependent, and shouldn't we respect what part of it is the court? That certainly is the standard. It is a high standard to meet. However, I think that in this case it is very clear that the court did commit error in finding that he continued to meet the criteria. His criminal history is very minor. There are a number of offenses in his past, but they are minor offenses. They're mostly property offenses. They're over 20 years ago. But this is, as I understand it, not about criminal activity, but about, as you said, competency, not as a word of art, but whether he can get along outside. And you read his testimony in front of the district court, and you may think it was helpful, but I don't think the district court did. And reading the cold record, it doesn't seem to me very helpful to the city. And perhaps that's somewhat of the disconnect between him and Dr. Lucking and why they don't get along. But what Dr. Lucking also said at the hearing and is quite concerning is that he is afraid that without taking the Haldol, he will experience a rapid decline into psychosis and achieve the status that he was at when he met the criteria for commitment initially. There was an 11-month span between stopping the Haldol and when we had the hearing, and that rapid decline into psychosis had not happened. While it wasn't helpful testimony perhaps, he was able to speak somewhat eloquently on his own behalf. That's not someone who was floridly psychotic at the time. Of course, it's a little hard to tell when you're in a structured atmosphere than when you're out on the street how quickly psychosis and how much it's going to evidence itself. That is true. However, I think that then what would be the remedy for that is just to keep mentally ill people incarcerated because they could then perhaps one day become psychotic, which is what the Supreme Court sort of said they should do, right? I don't think it met the burden of showing a substantial danger at the district court level. And when Dr. Lucking said that he could decline to the point where he was at when he met the criteria for commitment, I think it's powerful evidence that at the time of the hearing he did not meet the criteria for commitment presently. Dr. Lucking was concerned that it could happen, that it may happen, but that it was not the case at the time of the hearing in 2012, and we believe that the court committed error in finding that he could decline. Going back to Judge Wilkinson's question, was there testimony from someone that he didn't meet the criteria? There was not, other than Mr. Taylor's own. Is there any other questions? Thank you so much. Thank you. Ms. Danels, we'd be happy to hear from you. Thank you, Your Honor. May it please the court, my name is Jennifer Danels and I represent the United States, the appellee in this case. The district court's finding that Mr. Taylor continued to meet criteria for civil commitment under 18 U.S.C. 4246 should be affirmed. In early 2007, the government met its burden by proving by clear and convincing evidence that Mr. Taylor did meet criteria for civil commitment. However, at the review hearing on February 6, 2012, Mr. Taylor had the burden to show by a preponderance of the evidence that he had recovered to such an extent that his release no longer created the substantial risk of bodily injury or serious damage to property. Taylor's evidence, as we just discussed, he did not put forth any expert opinion that stated that he no longer presented the substantial risk. In fact, the only evidence that he did put forward was his own testimony that certainly didn't help his case. If anything, it just confirmed that Mr. Taylor still suffers from delusions. He thinks others are conspiring to keep him imprisoned and that he's being discriminated against. On the other hand, the government put forward, had two expert reports of at least three experts, since one of the reports was actually signed by two forensic mental health experts. That all gave the opinion that Mr. Taylor continued to meet criteria and that his release would still provide a substantial risk of danger. What about the fact that he's kept in an open unit and it appears from the record that the last aggressive act on his part was in 2006? Certainly. That was definitely one of the factors that all the experts considered. However, they looked at the totality of the evidence. There's not one fact alone that can predict a person's propensity for violence upon their release. And Mr. Taylor was kept in an open mental health unit at the time of the hearing. However, this is not the same thing. This is still a very structured environment. And while it's great that Mr. Taylor can do well under these conditions, this was but one mitigating factor that all experts took into consideration when they gave their opinion that he continued to meet criteria. You say it's a very structured environment still. What do you mean by that? Well, the fact that he is in an open mental facility. He can't come and go as he pleases. There are doctors and correctional officers around him 24-7. These individuals are used to dealing with inmates with mental health issues. They're trained to deal with these individuals, and they do it well. They help control his behavior by their own interactions with him. This is not the same thing and doesn't perfectly translate to an individual who's released on the street with no structure whatsoever. Can I ask you, are you holding these hearings more rapidly than they were three years elapsed here? I'm sorry, can you repeat that? Yes, I can repeat it. Is the government holding the hearings required by the statute? Are they being held with more clarity than they were here three years elapsed before there was a hearing here, right? Well, Mr. Taylor can request a hearing under the statute, a review hearing, every six months. No, no, no, the initial hearing here. Okay. A long time elapsed. Remember we have this whole backup of cases because of the Supreme Court case and that the government was undertaking and told this court, and we reported it in a published opinion, that it was seeing that it was going to grant the hearings, making the determination required by the statute, more quickly than it had been. In this case, it hadn't caught up. Is the government now giving these hearings more quickly? I'm not aware that there was any backlog in the 4246 realm. I do understand there was in the 4248. Three years just is not a backlog? Oh, you're talking about, well, from when he was arrested and indicted in 2005? When was he fined? I'm sorry, when was he what? He went to Butner in 2006. He was found incompetent to stay on trial. In 2006. I believe it was in 2006. The government then did a 4246 assessment to determine whether he was dangerous, filed a certificate, and the hearing was actually held. Who didn't request a hearing? Who didn't request a hearing? The government filed their certificate, and the court set the hearing, which was then held in January of 2007. And then this is a follow-up hearing in this case? That's correct. This is a review hearing. I'm sorry. The initial commitment was in early 2007. It is then Mr. Taylor has the option to request a review hearing under the statute every six months. That is correct. And so that's what he did in this case, and that's why the judge did hold a review hearing in February of 2012. And he had made that motion in November of 2011. So he was in the green? That's correct. That's correct, Your Honor. Okay, thanks. These things do move rather quickly. Well, this one, too. Similar ones have not. But just to go back to the point that these experts consider the totality of the evidence, they consider Mr. Taylor's entire behavior and psychological profile. There's the fact that he does suffer from a very serious mental disorder, being schizophrenic disorder or schizoaffective disorder, which causes one to have paranoid, persecutory delusions, which in and of itself has increased his risk of violence. Mr. Taylor does not have any insight into this specific mental illness. He thinks he has depression, and that's what he takes the medication for. Two of the three medications that's been prescribed to him he does take, but those only treat depression. They do not treat the psychotic symptoms that he also suffers from. The experts also considered his previous institution violence. When Mr. Taylor did arrive at FMC Botner in 2006, he was unmanageable, and he was not held in the open mental facility. He was actually in a locked unit. He was threatening to kill staff, threatening to kill himself, throwing food trays, breaking food trays, and it was when he began taking the Haldol, the medication that he's now refusing, that his behavior improved significantly, so much so that he was actually then able to move to the open mental health unit instead of the restricted unit, and he was also conditionally released. That conditional release did not last very long because Mr. Taylor violated his conditions very quickly after he was released by drinking alcohol, and so that's why he is currently confined. Drinking alcohol. He returned to the group home that he was living in under the influence of alcohol and also in possession of a bottle of alcohol, and if I recall, it was within a day after he'd been conditionally released to this group home. So this was definitely a consideration that the experts considered in giving their opinion. He also has a criminal history that includes domestic violence, weapon offenses. He has threatened to use weapons against others by shooting them, and then again, the experts did consider his recent improvement, I guess you could say, that he was maintaining himself in an open mental health unit. However, four of those years that he was in this open mental health unit, he was taking Haldol. It had only been, I believe, about a year that he was able to compose himself without also the use of the Haldol. Is there testimony in this record that the Haldol is the only medicine that would assist him? In Dr. Tabrizi's report, she does note that this medication is, or at least treatment with antipsychotic medication, is the only effective treatment for this condition. But there are other antipsychotics. That was not discussed on the record, but it might very well be that there are other medications that he might try. Anything further? No, Your Honors, and if there's no further questions, the government rests on its written brief and respectfully requests that the district court decision be affirmed. Thank you. Ms. Brary, you have some rebuttal time. Thank you. I'd like to just briefly touch on a few points that Ms. Danels brought up. It is true that with a mental illness, there is an increased risk of violence or danger to others. However, any increased risk of violence from a mental illness has not borne out in Mr. Taylor's case in the environment that he's in. His freedom from incarceration, and as much as we want to talk about this being a federal psychiatric hospital as it is, it is a prison. His freedom is hinging on him agreeing to take a powerful antipsychotic medication that has very powerful side effects, even though his behavior belies the need for it at this time. But to agree with you, we would have to overturn the unanimous expert view plus the district court's finding. Taking into consideration the testimony presented and the expert report prepared, yes, that is what you would have to do. And there are other avenues for Mr. Taylor to seek help and to seek treatment. It's not necessarily the federal government's job to monitor mentally ill people who happen to come into contact with it through criminal complaints for relatively minor offenses, and he can seek help in the community and he can seek help within the state in which he is domiciled. It was the district court's job to synthesize all the evidence presented before it through the reports, through the testimony, and make a finding based on the facts. And we believe that Mr. Taylor's release would not create a substantial risk of danger and that the court was in error in finding that. He's continued to meet the criteria under 4246. Thank you. We thank you. We will adjourn court. I thank the courtroom deputy for her fine services. We will return court.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Stephanie D. Thacker